

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
05/23/2008

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 07-33461 |
| | § | |
| MICHAEL F. RUGGIERO, D.O. | § | (CHAPTER 7) |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| VGM FINANCIAL SERVICES | § | |
| | § | |
| Plaintiff, | § | ADVERSARY NO. 07-03380 |
| | § | |
| v. | § | |
| | § | |
| MICHAEL F. RUGGIERO, D.O. | § | |
| | § | |
| Defendant | § | |

**MEMORANDUM OPINION**

I.   Introduction

Michael Ruggiero, D.O. (Defendant) entered into a lease with VGM Financial Services (Plaintiff); thereafter, Defendant became unable to fulfill his payment obligations under the lease. As a result, Defendant eventually became liable to Plaintiff in the amount of $230,000, which Defendant seeks to discharge under Chapter 7. Plaintiff contests the dischargeability of that debt, arguing that: (1) under § 523(a)(2)(A), Defendant obtained money by false pretenses, false representations, or actual fraud; (2) under § 523(a)(4), Defendant obtained money by larceny; or (3) under § 523(a)(6), Defendant willfully and maliciously injured Plaintiff.[1] The

---

1. Unless otherwise noted, all section references hereinafter shall refer to 11 U.S.C., and all references to the "Code" or the "Bankruptcy Code" shall refer to the United States Bankruptcy Code.

issue presented to this Court is whether Defendant possessed the requisite intent necessary to deny the dischargeability of his $230,000 debt under these sections of § 523(a). For the reasons set forth below, this Court finds that Defendant's debt to Plaintiff does not warrant nondischargeability under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), or (a)(6).

## II. Credibility of Witnesses

Five witnesses testified: Defendant, Edward Mann (a business broker), Brian Schmadeke (the Plaintiff's representative), Lisa Nimocks (a former employee of a company in which the Defendant had an interest), and George West (another former employee of a company in which the Defendant had an interest). The Court finds all five witnesses to be credible.

## III. Findings of Fact

The facts, as stipulated to or admitted by the parties, or as adduced from testimony of various witnesses, or as established by the introduction of exhibits, are as follows:

1. Defendant is the sole shareholder, officer, and director of Michael Ruggiero, D.O., P.A. He has been practicing medicine since 1983.

2. MMCi, Inc. (MMCi) was a company which was in the business of purchasing medical equipment to lease to small, rural hospitals.

3. Defendant initially met Robert Stabell (Stabell) when Stabell was his patient. Defendant thereafter entered into various business transactions with Stabell, including joining him as a shareholder, officer, and director of MMCi. Defendant trusted Stabell and firmly believed that Stabell was an honest individual.

4. Defendant's trust in Stabell was evidenced by loans and capital contributions that Defendant made to MMCi, totaling $113,000, prior to the transaction that is the subject of this adversary proceeding.

5. Defendant made these loans to MMCi, at the express request of Stabell.

6. Defendant complied because he trusted Stabell and relied upon his judgment.

7. Defendant owned 250 shares of stock in MMCi.

8. Defendant was elected to the position of Vice-President of MMCi and served on its board of directors.

9. Stabell owned 550 shares of stock in MMCi. He served as President and CEO of the company and served on its board of directors. Stabell was the individual responsible for the daily operations of MMCi. He made all of the key decisions for this company and was the only signatory on the company's bank accounts.

10. Stabell told Ruggiero that he (i.e. Stabell) had put together a transaction involving the purchase of certain ultrasound equipment (the Equipment) that Stabell represented would be placed at Swisher Memorial Hospital in Tulia, Texas (the Hospital).

11. Stabell told Defendant that he (i.e. Defendant) needed to sign a lease with the Plaintiff (the Lease) because Stabell's credit rating was too low, and in order for funds to be remitted to MMCi so that it could purchase the Equipment for the Hospital, Defendant would need to use his good credit rating to execute the Lease.

12. On February 8, 2006, Defendant signed a Master Agreement with Plaintiff. In the Master Agreement, Defendant represented that the Equipment would be located, and remain located, at the address indicated on the Lease – which was Defendant's medical office address in Bryan, Texas as opposed to the Hospital's address in Tulia, Texas. [Plaintiff's Exhibit No. 4]

13. On February 8, 2006, Defendant signed the Lease with Plaintiff covering the Equipment. [Plaintiff's Exhibit No. 5.] By signing the Lease, Defendant made representations to Plaintiff as described in paragraphs 14, 15, and 16 below:

14. In the Lease, the address where the Equipment would be delivered and remain was Defendant's business address, not at the Hospital's address in Tulia, Texas. [Plaintiff's Exhibit No. 5.].

15. In the Lease, Defendant represented that ". . . Customer [Defendant] warrants (a) delivery and acceptance of the equipment and of any supporting documentation; and, (b) that the equipment is satisfactory for purposes of the lease." [Plaintiff's Exhibit No. 5.]

16. In the Lease, Defendant represented that "Customer's [i.e. Defendant's] acceptance shall be conclusive and irrevocable. . ." [Plaintiff's Exhibit No. 5]

17. Defendant did not believe that he was making false representations to Plaintiff at the time he executed the Master Agreement and Lease. At trial, Defendant conceded that the aforementioned provisions within the Master Agreement and Lease turned out to be false.

18. At trial, Defendant testified that he never read the Lease or Master Agreement, but just signed where the signature block appeared. Defendant stated that he did not read the documents because he assumed that "the rest" was "dealt with by the people who were managing all of this." The Court infers from this statement that Defendant was referring, at a minimum, to Stabell and other employees at MMCi whom Stabell supervised.

19. After February 2006, Eddie Mann (Mann) of RC Leasing & Consulting, LLC, telephoned Defendant, on behalf of Plaintiff, and asked him the following question: "I am calling to confirm that you received the Equipment and that it's in good working order?" Defendant responded in the affirmative.

20. At trial, Defendant testified that he represented to Mann that the Equipment had been delivered because: "I believed that [the Equipment] was placed at Swisher Memorial Hospital" because "that was the original plan" and "Mr. Stabell told me

that it was placed." At trial, Defendant conceded that what he represented to Mann turned out to be false.

21. After Defendant informed Mann that MMCi had received the Equipment and that it was in good working order, Mann testified that Defendant explicitly told him to pay the vendor. Defendant did so because, having been assured by Stabell that MMCi had taken delivery of the Equipment and that it was in good working order, Defendant honestly believed that the transaction should be concluded.

22. Mann notified Plaintiff that Defendant had confirmed delivery of the Equipment.

23. Defendant had no reason to know or believe that Stabell, as President of MMCi, had not purchased the Equipment just as he had represented to Defendant.

24. On February 9, 2005, Plaintiff wired the sum of $76,356.50 to MMCi's checking account so that MMCi could pay for the Equipment. On February 15, 2006, Plaintiff wired once again the sum of $76,356.50 to MMCi's checking account so that MMCi could pay for the Equipment.

25. But for the execution of the Lease with Defendant's representations, Plaintiff would not have wired money to MMCi.

26. Defendant never notified Plaintiff that MMCi did not order the Equipment.

27. On October 23, 2006, after Defendant did not make the payments due under the Lease, the Plaintiff filed suit in Iowa state court. The state court entered judgment that Defendant, Stabell, and entities owned by these two individuals were jointly and severally liable to Plaintiff, in the amount of $177,916.71, plus additional fees and expenses of $404.50, and court costs of $150, together with interest at the rate of 18% per annum until the judgment is paid. As of the trial date, the total balance owed under the judgment had risen to approximately $230,000.

28. On or about November 6, 2006, Defendant discovered that MMCi had never ordered the Equipment.

29. At trial, Defendant admitted that the Equipment was never delivered to his office, and that he never had any intention to take possession himself of the Equipment.

30. Defendant expected the Equipment to be delivered to the Hospital and he expected to make a profit from the transaction.

31. Plaintiff relied on the representations in the Lease as assurances that the Equipment was delivered to Defendant's office and was satisfactory for the purposes of the Lease.

32. Defendant did not have knowledge of Stabell's bad conduct while Stabell served as President and CEO of MMCi. Defendant did not have knowledge that MMCi failed to purchase the Equipment. Rather, Defendant believed that Stabell had acted as promised, and that he, as President of MMCi, had seen to it that the Equipment had been purchased and delivered to the Hospital.

33. Throughout the course of the transaction with Plaintiff, all representations relating to the Equipment made by Defendant were based upon information provided by Stabell, which Defendant honestly believed to be true and accurate.

34. On March 31, 2008, Stabell was convicted for Misapplication of Fiduciary Property greater than $20,000 and less than $100,000 and was sentenced to 10 years of confinemen. Two witnesses, Lisa Nimocks and George West, testified that they quit MMCi because they did not like Stabell's business practices.

### IV. Conclusions of Law

**A. Jurisdiction and Venue**

This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §§ 1334(a) and (b). Since the Complaint seeks to determine dischargeability of a debt under 11 U.S.C. §

523(a), this is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I) and (O). Venue is proper under 28 U.S.C. § 1409.

**B. Plaintiff's burden of proof under 11 U.S.C. § 523 is a preponderance of the evidence.**

The United States Supreme Court held in *Grogan. v. Garner* that preponderance of the evidence is the appropriate standard of proof for establishing dischargeability exceptions under § 523. *Grogan v. Garner*, 498 U.S. 279 (1991).

**C. Five elements must be met for a debt to be nondischargeable under § 523(a)(2)(A).**

Section 523(a)(2)(A) provides that a debt will not be discharged if it is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent [that it was] obtained by false pretenses, a false representation, or actual fraud." To prevail under § 523(a)(2)(A), the Fifth Circuit has held that the creditor must show that: (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result of its reliance. *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001); *In re Quinlivan*, 434 F.3d 314, 317 (5th Cir. 2005) (citing *RecoverEdge v. Pentecost*, 44 F.3d 1283, 1293 (5th Cir. 1995)). Therefore, Plaintiff has the burden to establish each of these elements, by a preponderance of the evidence, in order to prevail.

**D. Plaintiff did not meet its burden of establishing, by a preponderance of the evidence, that Defendant's debt is nondischargeable under § 523(a)(2)(A).**

Plaintiff established the first, fourth, and fifth elements. Regarding the first element, Defendant made a representation by signing the Master Agreement expressly stating that the Equipment would be delivered and located at his office. [Plaintiff's Exhibit No. 4, FOF Nos. 12.] Additionally, by signing the Lease, Defendant represented that: (1) the Equipment was satisfactory for purposes of the Lease; (2) the Equipment would be delivered to Defendant's

7

business address; (3) Defendant's acceptance was conclusive and irrevocable; and (4) Defendant authorized Plaintiff to pay the equipment manufacturer/supplier. [Plaintiff's Exhibit No. 5, FOF Nos. 13, 14, 15, 16.] Indeed, Defendant conceded during cross-examination he made representations to Plaintiff through Mann and the Lease. [FOF Nos. 19, 20, 21, 22, 23.] Therefore, Plaintiff easily established the first element.

In regard to the fourth element, that the creditor justifiably relied on debtor's representations, courts have found that justifiable reliance is a lower standard than reasonable reliance. *In re Jacobson*, 2007 U.S. App. LEXIS 17844, *5 (5th Cir. 2007) (citing *Field v Mans*, 516 U.S. 59, 74–75 (1995)). In the suit at bar, Plaintiff established that it wired $152,713.00 to MMCi only after it received the signed Lease and Master Agreement from Defendant and Eddie Mann confirmed delivery of the Equipment with Defendant. [FOF Nos. 21, 22, 24, 25.] At trial, Plaintiff's representative, Brian Schmadeke, gave uncontroverted and unequivocal testimony that but for Defendant's representations contained in the Lease, Plaintiff would not have wired the money. [FOF No. 25.] Therefore, Plaintiff established that in extending the financing of $152,713.00, it justifiably relied on Defendant's representations.

Plaintiff also established the fifth element, that it sustained a loss as a result of its justifiable reliance on Defendant's representations. Plaintiff, in relying on the Lease signed by the Defendant, provided funds of $152,713.00, which were not repaid and eventually reduced to a judgment, the balance of which is approximately $230,000.00. [FOF Nos. 24, 25, 27, 31.] Thus, Plaintiff has incurred a loss of $230,000.00, thereby satisfying the fifth element.

However, even though Plaintiff met its burden of establishing the first, fourth, and fifth elements by a preponderance of the evidence, it failed to establish the second and third elements. These elements require, respectively, that at the time Defendant signed the Master Agreement and the Lease, he knew the representations contained therein were false, and that he made the

8

representations with the intent to deceive Plaintiff. Additionally, the Plaintiff must prove that at the time Defendant made the oral representations to Mann, he knew they were false and that he made these representations with the intent to deceive Plaintiff.

The Court's duty, as a finder of fact, is to determine the credibility of a witness. Fed. R. Civ. P. 52(a); *Pigrenet v. Boland Marine & Mfg. Co.*, 631 F.2d 1190, 1192 (5th Cir. 1980). After listening to Defendant's testimony, the Court finds that he is a truthful and credible witness who honestly believed that the Equipment had been delivered and was located at the Hospital. [FOF Nos. 20, 21, 23, 28, 30, 32, 33.] Plaintiff failed to establish that at the time Defendant signed the Master Agreement and the Lease, he knew that his representations about the Equipment were false, or that he was trying to deceive Plaintiff in order to receive money from them. Plaintiff further failed to establish that when Defendant made oral representations to Mann, Defendant knew his representations were false.

It is important to note that the Fifth Circuit has held that:

> An intent to deceive may be inferred from "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation." *In re Norris*, 70 F.3d 27, 30 n. 12 (5th Cir. 1995), (citing *In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994)). Nevertheless, an honest belief, even if unreasonable, that a representation is true and that the speaker has information to justify it does not amount to an intent to deceive. *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997). Thus, a "dumb but honest" defendant does not have scienter. *Id.*, (citing 2 F. Harper, *et al.*, Law of Torts § 7.3, at 393 (2d Ed. 1986)).

*In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005).

Application of *Acosta* to the suit at bar lends support to this conclusion: even though Defendant may have been acting carelessly in not checking to confirm that the Equipment was at the Hospital and was in good working order, his honest belief that it was – even if unreasonable – does not rise to the level of intending to deceive Plaintiff. Indeed, Defendant's concession that he had not read the Lease, but just blindly signed his name in the indicated location. [FOF No. 18]

9

supports the Court's finding that Defendant was merely acting carelessly, without the requisite intent of deception. Additionally, the Court finds that Defendant, who lent money to MMCi and had business interactions with Stabell for several years, clearly trusted Stabell. [FOF Nos. 3, 4, 5, 8.] Defendant honestly relied on Stabell's representations and used this information in his dealings with Plaintiff. [FOF No. 33, 32, 23, 18, 20, 21.] Therefore, given that Defendant was a truthful and credible witness who honestly believed that he was making accurate representations to Plaintiff at the time he executed the Lease and at the time he spoke to Mann, the Court finds that Plaintiff failed to establish the second and third elements by a preponderance of the evidence.

Because Plaintiff did not meet its burden of proving, by a preponderance of the evidence, all five elements required to make a debt nondischargeable under § 523(a)(2)(A), the Court concludes that Plaintiff cannot prevail under this provision.

### E. Plaintiff did not commit larceny or embezzlement under § 523(a)(4) of the Bankruptcy Code.

Section 523(a)(4) provides for the nondischargeability of any debt incurred by larceny or embezzlement. *In re Davenport*, 353 B.R. 150, 195 (Bankr. S.D. Tex. 2006). Larceny is "the fraudulent and wrongful taking and carrying away of the property of another with the intent to convert it to the taker's use and with intent to permanently deprive the owner of such property." *In re Hayden*, 248 B.R. 519, 527 (Bankr. N.D. Tex. 2000). Embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269 (1895). Larceny is not the equivalent of embezzlement. This Court previously described the distinction between larceny and embezzlement: "Both larceny and embezzlement involve the fraudulent appropriation of another's property; they only differ in timing. Larceny applies when the debtor unlawfully appropriates the property at the outset, whereas embezzlement applies when a debtor unlawfully

appropriates property after it has been entrusted to the debtor's care." *Davenport*, 353 B.R. at 199.

Furthermore, in regard to larceny, § 523(a)(4) requires that the actor carry away the property with the *intent* to convert it to his own use and with the *intent* to permanently deprive the owner of such property. *Hayden*, 248 B.R. at 526. Absent this specific intent, a party cannot commit larceny under § 523(a)(4). *Id.*

In the suit at bar, the Plaintiff asserts that the Defendant's debt is nondischargeable because the Defendant committed larceny. This Court disagrees. MMCi lawfully received the funds from Plaintiff, even though the lease agreement executed by Defendant contained false misrepresentations. [FOF No. 6] Larceny requires that a person unlawfully appropriate the property from the *outset*. At the outset, Plaintiff purposely remitted to MMCi funds in the amount of $152,713.00, as set forth in the lease agreement. [FOF No. 24] Because the funds were lawfully remitted to MMCi at the inception of the transaction, the contested transaction does not fall under the category of larceny.

Furthermore, Defendant lacked the necessary intent for larceny as required by § 523(a)(4). Defendant testified that when he executed the Lease agreement with Plaintiff so that MMCi could receive the funds, he did so honestly, absent any intent to cause harm to Plaintiff. [FOF No. 11, 13] Though Defendant conceded that he did not read the Lease, Defendant signed and bound himself to the representations of the Lease because he trusted Stabell and relied upon his judgment. [FOF Nos. 4, 13] Defendant testified that he merely wished for MMCi to obtain the funds so that MMCi could purchase the Equipment and deliver it to the Hospital. [FOF No. 10] Even though Defendant, by signing the Lease, intended for Plaintiff to wire to funds to MMCi, he did not intend for MMCi to never purchase the Equipment. Defendant was adamant that the harmful consequences suffered by Plaintiff were completely unintended. [FOF No. 23]

Because the Court finds Defendant's testimony credible, the Court finds that Defendant lacked the requisite intent to commit larceny. Therefore, because Defendant did not commit larceny, he cannot be denied the discharge of this debt under § 523(a)(4).

### F. Defendant did not commit willful and malicious injury to Plaintiff under § 523(a)(6) of the Bankruptcy Code.

Section 523(a)(6) of the Bankruptcy Code denies the discharge of any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. In order for conduct to be willful and malicious, the debtor must have acted with the actual intent to cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 57 (1998); *In re Williams*, 337 F.3d 504, 509 (5th Cir. 2003). The test for willful and malicious injury is whether there exists "either an objective substantial certainty of harm or a subjective motive to cause harm on the part of the debtor." *Williams*, 337 F.3d at 509. The debtor must have intended to cause specific *injury* to the creditor, not just have intended to do the *act* which caused injury to the creditor. *Kawaauhau*, 523 U.S. at 57.

In this suit, Defendant lacked the necessary intent to cause injury to Plaintiff. It is uncontested that the Defendant intended for Plaintiff to remit the funds to MMCi. [FOF No.11] However, in order for the Defendant to be denied a discharge of this debt under § 523(6), he must have caused Plaintiff to remit the funds to MMCi with the intent that the monies would never be repaid. In his testimony, Defendant stated that he did not intend to inflict any injury upon Plaintiff. [FOF No. 29] Rather, Defendant intended for MMCi to have use of the funds for an honest purpose— to purchase the Equipment. [FOF Nos. 10, 11]; with such purchase, Defendant expected to generate income himself from MMCi's placement of the Equipment, thereby allowing Defendant to make payments under the Lease. [FOF No. 30.] Because this

Court finds the Defendant's testimony credible, this Court concludes that Defendant's discharge of this debt may not be denied under § 523(a)(6).

### G. Defendant's subsequent discovery that MMCi had not ordered the Equipment, and his failure to make disclosure of this fact to Plaintiff, does not, in itself, establish any intent by the Defendant to harm Plaintiff.

Finally, Plaintiff suggested that Defendant's intent to harm Plaintiff was demonstrated by the fact that once the Defendant discovered on November 6, 2006 that the Equipment had in fact never been purchased and delivered [FOF No. 28], Defendant failed to disclose this information. [FOF 26] Plaintiff argues that his failure to disclose constitutes a cover-up evidencing Defendant's intention to defraud Plaintiff. This Court disagrees. Defendant testified that once he discovered this important information, he became very concerned and retained counsel. From the Defendant's testimony, the Court concludes that Defendant's counsel recommended that he make no statements about this information, and Defendant followed this advice. While Defendant's failure to disclose may reflect poorly on Defendant, this fact <u>alone</u> – and this is the only fact impugning the Defendant's integrity– is insufficient to cause this Court to conclude that Defendant intended to harm Plaintiff. Accordingly, Plaintiff's argument on this point must fail.

### V. Conclusion

The dischargeability exceptions of § 523 are to be narrowly construed in order to give effect to the fresh start policy of the Bankruptcy Code. *In re Walker*, 48 F.3d 1161, 1164-65 (5th Cir. 1995). Thus, exceptions to dischargeability "should be limited to those clearly expressed in the statute." *Matter of Boyle*, 819 F.2d 583, 588 (5th Cir. 1982). Additionally, under 11 U.S.C. § 523, the plaintiff bears the burden of proving the nondischargeability of a debt by a preponderance of evidence. *Garner*, 498 U.S. at 297, 279. In the suit at bar, the Court finds that Defendant should not be denied discharge under 11 U.S.C.§ 523(a)(2)(A), (a)(4), or (a)(6).

Plaintiff's claim that Defendant's debt should be nondischargeable under § 523(a)(2)(A) fails because Plaintiff did not establish all five essential elements, as required by the Fifth Circuit. *Mercer*, 246 F.3d at 403; *Quinlivan* 434 F.3d at 317 (citing *Pentecost*, 44 F.3d at 1293). Specifically, Plaintiff did not meet its burden of proving that Defendant knew his representations were false at the time he signed the Master Agreement and Lease, or that Defendant made representations to Mann with the intent to deceive Plaintiff. Therefore, Plaintiff cannot prevail under § 523(a)(2)(A).

Furthermore, the Court finds that Defendant has not committed larceny under § 523(a)(4). When Defendant signed the Lease with Plaintiff, he did not intend to deprive Plaintiff of his property; rather, Defendant intended to initiate a profitable business deal that would benefit both Defendant and Plaintiff. Therefore, because Defendant lacked the requisite intent to deprive the Plaintiff of his property, Plaintiff's claim under § 523(a)(4) fails.

Additionally, Plaintiff's § 523(a)(6) claim fails because Defendant did not intend to willfully and maliciously injure the Plaintiff. Defendant's motive in signing the Lease was simple: to make money from what he believed to be a lawful transaction, based upon his reliance on Stabell's representations. Therefore, § 523 (a)(6) does bar the discharge of this debt.

In sum, this Court concludes that the Plaintiff has failed to establish any of its claims. Accordingly, judgment will be entered simultaneously with the of this memorandum opinion.

Signed this 23rd day of May, 2008.

Jeff Bohm
U.S. Bankruptcy Judge